UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF ANGEL ANTONIO MENDOZA-SARAVIA, by and through successors of interest; TERESA REYNA MENDOZA-SARAVIA; PEDRO MENDOZA; ANGIE MELISSA CASTRO, by and through her general guardian; and BLANCA ESTELA CASTRO,<br><br>            Plaintiffs,<br><br>     v.<br><br>FRESNO COUNTY SHERIFF'S DEPARTMENT; CITY OF MENDOTA; COUNTY OF FRESNO; WEST COAST AMMUNITION; and DOES 1 through 100, inclusive,<br><br>            Defendants. | 1:10-cv-0618 OWW SMS<br><br>ORDER RE: COUNTY OF FRESNO'S AND CITY OF MENDOTA'S MOTION TO STRIKE MATTERS FROM PLAINTIFFS' SECOND AMENDED COMPLAINT (Doc. 35) |

Moving Defendants, County of Fresno and City of Mendota ("Defendants"), seek to strike matters from the Second Amended Complaint, specifically the claim by Blanca Estela Castro as the unmarried domestic partner of decedent, Angel Antonio Mendoza-Saravia, for deprivation of her United States Constitution Fourteenth Amendment liberty interest in and right of familial association, allegedly caused when decedent was fatally shot with

1

a bean bag round by a Fresno Sheriff's Deputy.

A.   <u>Standard of Review</u>.

Federal Rule of Civil Procedure 12(f) authorizes the Court to strike from any pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter from any complaint or defense." For the purposes of a motion to strike, any material matter is "that which has no essential or important relationship to the claim for relief or the defense being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), rev. on other grounds, 510 U.S. 517 (1994). Rule 12(f) is designed to eliminate from consideration issues that "can have no possible bearing on the subject matter of the litigation." *Naton v. Bank of California*, 72 F.R.D. 550, 552, n.4 (N.D. Cal. 1976). In addition to Rule 12, a District Court's inherent authority to manage its docket authorizes the court to strike matters from the docket.

B.   <u>Essential Allegations of the Complaint</u>.

Plaintiff, Blanca Estela Castro, claims an intimate relationship with decedent Mendoza-Saravia arising from her status as the mother of the decedent's child, Angie Melissa Castro. Complaint ¶ 17. She resided with the decedent as his domestic partner, and with the decedent's children in a "family unit." Ms. Castro depended on decedent for necessities of life. Plaintiff Angie Melissa Castro was born approximately three months after the death of her father, Mendoza-Saravia. Plaintiff Castro's second claim is for deprivation of her Fourteenth

2

Amendment rights of intimate association with the decedent. Their daughter, Angie's claim for loss of familial relationship with her deceased father is not challenged.

## LAW AND ANALYSIS

**A.   Fourteenth Amendment Familial Association Right.**

The Supreme Court has recognized that "certain kinds of personal bonds," *Roberts v. United States Jaycees*, 468 U.S. 609, 618 (1984) and "certain [kinds of] intimate conduct," *Lawrence v. Texas*, 539 U.S. 558, 562 (2003) are protected by the substantive component of the Due Process Clause.  Whether subsumed under the Fourteenth Amendment right to intimate association, or First Amendment right to privacy, the Supreme Court consistently has recognized that "choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our Constitutional scheme."  *Roberts*, 468 U.S. at 617-18; *see also, Lawrence*, 539 U.S. at 567.  Protected rights of intimate association have been recognized in unmarried, long-term relationships. *Christensen v. County of Boone, Illinois*, 483 F.3d 454, 463 (7th Cir. 2007) (*reh'g and reh'g en banc denied* 2007).

In *Christensen*, the Plaintiffs, an unmarried couple, brought a civil rights action against the County and a Deputy Sheriff alleging the Deputy Sheriff interfered with the couple's Constitutional right to be free from unreasonable searches and seizures, their right to intimate association, and intentional

3

infliction of emotional distress.  The trial court sustained a motion to dismiss the complaint for failure to state a claim based on lack of standing.  The Seventh Circuit held an unmarried heterosexual couple in a long-term relationship was a form of "intimate association" protected by the Fourteenth Amendment.  *Roberts* recognized that intimate associations protected by the Due Process Clause "have played a critical role in the culture and traditions of the nation by cultivating and transmitting shared ideals and beliefs; they thereby foster diversity and act as critical buffers between the individual and the power of the State."  *Roberts*, *supra*, 468 U.S. at 618.  These relationships bestow "the ability independently to define one's identity that is central to any concept of liberty."  *Id.* at 619.  In discussing *Lawrence v. Texas*, *supra*, *Christensen* held: "It is impossible to see how an unmarried heterosexual couple in a long-term relationship could receive less protection than a private homosexual relationship, whether or not the participants are married."  *Christensen* at 463.  The Seventh Circuit concluded on the authority of *Lawrence*, "that the plaintiffs' relationship (unmarried) is a form of 'intimate association' protected by the Constitution."  *Id.* (citing *Montgomery v. Stefaniak*, 410 F.3d 933, 937 (7th Cir. 2005)); *see also*, *e.g.*, *Anderson v. City of LaVergne*, 371 F.3d 879, 882 (6th Cir. 2004) (an unmarried couple is engaged in a constitutionally-protected intimate association where they were living together, were romantically and sexually involved, and were monogamous).  *Anderson* found: "Therefore, in addition to marriage, courts have recognized both personal friendships and non-marital relationships as types of 'highly

4

personal relationships' within the ambit of intimate associations contemplated by *Roberts*."

*Akers v. McGinnis*, 352 F.3d 1030, 1039-40 (6th Cir. 2003) further citing *Roberts*, 468 U.S. at 617-18, held: "Concerning intimate association the Supreme Court 'has concluded the choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our Constitutional scheme.'"

Although neither party has cited a Ninth Circuit case directly on point, the Complaint's allegations of an intimate domestic association, albeit unmarried, where decedent's family was combined with Plaintiff; they lived together; she was pregnant with decedent's child at the time of his death; they shared finances; and co-habited and shared the intimate details of each other's lives; all converge to satisfy the intimate association familial relationship requirement of the Fourteenth Amendment. If Defendants challenge the duration and quality of the relationship as an insufficient intimate association, this factual dispute is not resolvable as a matter of law on a Rule 12(f) motion to strike.

B.     Intimate Association Analysis

The Ninth Circuit in *IDK, Inc. v. County of Clark*, 836 F.2d 1185 recognizes that the relationships protected by the Fourteenth Amendment "are those that attend the creation and sustenance of a family" and similar "highly personal relationships." *Id.* at 1193 (*citing, Roberts*, 468 U.S. at 618-

19). Individuals who are deeply attached and committed to each other as a result of their having shared each other's thoughts, lives and experiences and who, by the very nature of such relationships, are involved in relatively few intimate associations during his or her lifetime, are all relevant factors to determine whether a particular association is eligible for protection by the Due Process Clause. These factors include the number of persons involved in the relationship; the congeniality of the relationship; its duration; the purposes for which it was formed; and the selectivity in choosing participants. Involvement in procreation, here present; raising and educating children, here present; cohabitation with relatives, here present; or other activities of family life all typify the required intimate association. All the incidents of the *IDK* interpretation of *Roberts*' intimate association factors are here present. The Complaint alleges a sufficient intimate association between Plaintiff Castro and the decedent to support a Fourteenth Amendment Due Process claim for unlawful State interference in protected a family relationship.

There is no question that for Plaintiff Angie Melissa Castro the Ninth Circuit expressly recognizes a parent's due process right to associate with his or her child and the standing of a child to sue for the deprivation of the loss of the familial association right with her parent. *See Porter v. Osborn*, 546 F.3d 1131, 1136 (9th Cir. 2008) (recognizing parent's Fourteenth Amendment Due Process right to associate with their deceased son). A "child's interest in her relationship with a parent is sufficiently weighty by itself to constitute a cognizable liberty

6

1  interest." *Smith v. City of Fontana*, 818 F.2d 1411, 1419 (9th
2  Cir. 1987), *cert. denied*, 484 U.S. 935 (1987) *overruled on other*
3  *grounds by Hodgers-Duran v. Lopez*, 199 F.3d 1037, 1040 n.1 (9th
4  Cir. 1999).

6  C.   <u>Interaction of Fourteenth and First Amendments</u>.
7       The First Amendment guarantees the right to "[T]wo sometimes
8  overlapping types of protective association." *Rode v.*
9  *Dellarciprete*, 845 F.2d 1195, 1204 (3d Cir. 1998). The Third
10 Circuit explained: "Associations founded on intimate human
11 relationships in which freedom of association is protected as a
12 fundamental element of liberty and associations formed for the
13 purpose of engaging in activities protected by the First
14 Amendment, such as the exercise of speech, assembly, and
15 religion." *Id.* at 1204 (*citing Roberts*, 468 U.S. at 617-18).
16 The claim in this case is more properly analyzed consistent with
17 the Fourteenth Amendment's Due Process guarantees, association
18 "founded on intimate human relationships in which freedom of
19 association is protected as a fundamental element of liberty."
20 *Rees v. Office of Children & Youth*, 2010 WL 3906311 (W.D. Pa.
21 2010). An unpublished Ninth Circuit decision, *Bevelhymer v.*
22 *Clark County*, 53 F.3d 337 (9th Cir. 1995) recognizes that "a
23 state violates the Fourteenth Amendment when it seeks to
24 interfere with the social relationship of two or more people."
25 *Id.* at 3 (*citing IDK*, 836 F.2d at 1193). For qualified immunity
26 purposes: "At least by 1988, it was clearly established that the
27 Fourteenth Amendment protects relationships between "individuals
28 [who] are deeply attached and committed to each other as a result

7

of their having shared each other's thoughts, beliefs, and experiences." *Citing, Wilson v. Taylor*, 733 F.2d 1539, 1544. The Circuit Court rejected the Defendant's claim in *Bevelhymer* "that a reasonable public official could not have known that the Fourteenth Amendment protects intimate associations between unmarried couples."

*Bevelhymer,* a pleading case, held that "despite the clarity of the law protecting intimate associations," it is necessary that sufficient facts be alleged to identify the nature and extent of the intimate association and that action was taken against the decedent as a result of his association with Plaintiff. *Id.* at 4 (Reinhardt, J., dissenting) (recommending that the case be remanded for opportunity to amend complaint: "intrusion into Plaintiff's intimate association causing termination of the relationship is an important and necessary part of the Fourteenth Amendment claim."). Here, Defendants have not moved to dismiss the claim, rather, they move to strike the claim as unauthorized by law, invoking state law, an apparent misapprehension that federal law also governs intimate association.

D.   <u>State Law</u>.

Defendants argue that the interface between State law and Civil Rights Act § 1983 is governed by 42 U.S.C. § 1988. Section 1988 requires a three-step analysis in considering whether to apply State law in a Civil Rights action. First, the Court must look for a Federal rule. Here, the inquiry ends, as Plaintiffs' counsel correctly argued at the hearing on this motion, a

8

1  cognizable Federal right to intimate association exists under the
2  Fourteenth Amendment to the United States Constitution.  Federal
3  law, the Fourteenth Amendment governs this deprivation of
4  intimate association claim.  Recourse to State law is
5  unnecessary.
6      Even, *arguendo*, if the next stage of the inquiry were
7  reached, the Court looks for a State law and, applies it "only if
8  it is not inconsistent with the Constitution and laws of the
9  United States."  *Wilson v. Garcia*, 471 U.S. 261, 267 (1985).
10      Defendant contends that the State wrongful death statutes,
11  borrowed to supplement § 1983 in the general area of wrongful
12  death actions (*citing Dell v. City of Milwaukee*, 746 F.2d 1205,
13  1235-41 (7th Cir. 1984), a red flagged case), prevent standing in
14  this case based on California Code of Civil Procedure §§ 377.60
15  and (f)(1), requiring a registered domestic partnership to have
16  been perfected to authorize a survivorship action for wrongful
17  death.  Accepting that no state right exists under the
18  survivorship law of California, the inquiry then turns to whether
19  the claimed right is consistent with the Constitution and laws of
20  the United States.  *Wilson v. Garcia, supra*, 471 U.S. at 267.
21      The policies underlying § 1983 include compensation of
22  persons injured by deprivation of Federal rights and prevention
23  of abuses of power by those acting under color of State law.
24  *Robertson v. Wegmann*, 436 U.S. 584, 590-91 (1978).  Because
25  Plaintiff cannot bring suit under C.C.P. § 377 as recognized in
26  *Reynolds v. County of San Diego*, 858 F.Supp. 1064, 1069 (S.D.
27  Cal. 1994), denying Plaintiff a claim for loss of decedent's
28  intimate association and domestic relationship, resulting from

9

his allegedly wrongful death under color of state law, is inconsistent with the § 1983 goals of compensation and deterrence when applied to Blanca's own loss.  Barring both State and Federal claims denies Plaintiff any compensation for her own constitutionally protected interest in decedent's companionship. It also limits the deterrent effect of § 1983 by allowing state actors to avoid compensating for the full extent of the injuries they cause.  California law should not be applied to prohibit Plaintiff from bringing a claim under § 1983 for violation of her own constitutionally protected Fourteenth Amendment intimate association interests.

### CONCLUSION

Under the United States Constitution and Federal law, 42 U.S.C. §§ 1983 and 1988, both Plaintiffs, Blanca Estela Castro and Angie Melissa Castro, the former unmarried domestic partner and child of the decedent, Angel Mendoza-Saravia, have standing under the United States Constitution and Federal law to assert a Civil Rights claim for deprivation of their intimate familial association with the decedent allegedly in violation of their due process right protected by the Fourteenth Amendment to the United States Constitution.  For all the reasons discussed above, Defendants' Motion to Strike the allegations of the Second Claim of the Second Amended Complaint as to Blanca Castro is DENIED.

IT IS SO ORDERED.

Dated:   February 16, 2011                   /s/ Oliver W. Wanger
                                        UNITED STATES DISTRICT JUDGE