1

2

3

4

5                  UNITED STATES DISTRICT COURT

6                  EASTERN DISTRICT OF CALIFORNIA

7

8   ESTATE OF ANGEL ANTONIO MENDOZA- )    1:10-cv-0618 OWW SMS
    SARAVIA, by and through          )
9   successors of interest; TERESA   )    CORRECTED ORDER RE: COUNTY
    REYNA MENDOZA-SARAVIA; PEDRO      )    OF FRESNO'S AND CITY OF
10  MENDOZA; ANGIE MELISSA CASTRO,    )    MENDOTA'S MOTION TO STRIKE
    by and through her general       )    MATTERS FROM PLAINTIFFS'
11  guardian; and BLANCA ESTELA      )    SECOND AMENDED COMPLAINT
    CASTRO,                          )    (Doc. 35)
12                                   )
                    Plaintiffs,      )
13                                   )
          v.                         )
14                                   )
    FRESNO COUNTY SHERIFF'S          )
15  DEPARTMENT; CITY OF MENDOTA;     )
    COUNTY OF FRESNO; WEST COAST     )
16  AMMUNITION; and DOES 1 through   )
    100, inclusive,                  )
17                                   )
                    Defendants.      )
18                                   )
    _____    )
19

20

21        Moving Defendants, County of Fresno and City of Mendota

22  ("Defendants"), seek to strike matters from the Second Amended

23  Complaint, specifically the claim by Blanca Estela Castro as the

24  unmarried domestic partner of decedent, Angel Antonio Mendoza-

25  Saravia, for deprivation of her United States Constitution

26  Fourteenth Amendment liberty interest in and right of familial

27  association, allegedly caused when decedent was fatally shot with

28  a bean bag round by a Fresno Sheriff's Deputy.

                              1

**A.     Standard of Review.**

Federal Rule of Civil Procedure 12(f) authorizes the Court to strike from any pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter from any complaint or defense."  For the purposes of a motion to strike, any material matter is "that which has no essential or important relationship to the claim for relief or the defense being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), rev. on other grounds, 510 U.S. 517 (1994).  Rule 12(f) is designed to eliminate from consideration issues that "can have no possible bearing on the subject matter of the litigation." *Naton v. Bank of California*, 72 F.R.D. 550, 552, n.4 (N.D. Cal. 1976).  In addition to Rule 12, a District Court's inherent authority to manage its docket authorizes the court to strike matters from the docket.

**B.     Essential Allegations of the Complaint.**

Plaintiff, Blanca Estela Castro, claims an intimate relationship with decedent Mendoza-Saravia arising from her status as the mother of the decedent's child, Angie Melissa Castro.  Complaint ¶ 17.  She resided with the decedent as his domestic partner, and with the decedent's children in a "family unit."  Ms. Castro depended on decedent for necessities of life. Plaintiff Angie Melissa Castro was born approximately three months after the death of her father, Mendoza-Saravia.  Plaintiff Castro's second claim is for deprivation of her Fourteenth Amendment rights of intimate association with the decedent. Their daughter, Angie's claim for loss of familial relationship

1  with her deceased father is not challenged.

2

3                           **LAW AND ANALYSIS**

4  **A.    Fourteenth Amendment Familial Association Right**.

5        The Supreme Court has recognized that "certain kinds of

6  personal bonds," *Roberts v. United States Jaycees*, 468 U.S. 609,

7  618 (1984) and "certain [kinds of] intimate conduct," *Lawrence v.*

8  *Texas*, 539 U.S. 558, 562 (2003) are protected by the substantive

9  component of the Due Process Clause.  Whether subsumed under the

10 Fourteenth Amendment right to intimate association, or First

11 Amendment right to privacy, the Supreme Court consistently has

12 recognized that "choices to enter into and maintain certain

13 intimate human relationships must be secured against undue

14 intrusion by the State because of the role of such relationships

15 in safeguarding the individual freedom that is central to our

16 Constitutional scheme."  *Roberts*, 468 U.S. at 617-18; *see also,*

17 *Lawrence*, 539 U.S. at 567.  Protected rights of intimate

18 association have been recognized in unmarried, long-term

19 relationships.  *Christensen v. County of Boone, Illinois*, 483

20 F.3d 454, 463 (7th Cir. 2007) *reh'g and reh'g en banc denied*

21 (2007).

22       In *Christensen*, the Plaintiffs, an unmarried couple, brought

23 a civil rights action against the County and a Deputy Sheriff

24 alleging the Deputy Sheriff interfered with the couple's

25 Constitutional right to be free from unreasonable searches and

26 seizures, their right to intimate association, and intentional

27 infliction of emotional distress.  The trial court sustained a

28 motion to dismiss the complaint for failure to state a claim

                              3

1  based on lack of standing.   The Seventh Circuit held an unmarried
2  heterosexual couple in a long-term relationship was a form of
3  "intimate association" protected by the Fourteenth Amendment.
4  Citing *Roberts*, 468 U.S. at 619, the Appeals Court explained that
5  "intimate associations" protected by the Due Process Clause "have
6  played a critical role in the culture and traditions of the
7  nation by cultivating and transmitting shared ideals and beliefs;
8  they thereby foster diversity and act as critical buffers between
9  the individual and the power of the State." *Christensen*, 483
10 F.3d at 463.   These relationships bestow "the ability
11 independently to define one's identity that is central to any
12 concept of liberty."  *Id.* (citing *Roberts*, 468 U.S. at 619.)

13      In discussing *Lawrence v. Texas*, *supra*, *Christensen* held:
14 "It is impossible to see how an unmarried heterosexual couple in
15 a long-term relationship could receive less protection than a
16 private homosexual relationship, whether or not the participants
17 are married."  *Id.* at 463.   That Court concluded on the authority
18 of *Lawrence*, "that the plaintiffs' relationship (unmarried) is a
19 form of 'intimate association' protected by the Constitution."
20 *Id.* (citing *Montgomery v. Stefaniak*, 410 F.3d 933, 937 (7th Cir.
21 2005)); *see also*, *e.g., Anderson v. City of LaVergne*, 371 F.3d
22 879, 882 (6th Cir. 2004) (an unmarried couple is engaged in a
23 constitutionally-protected intimate association where they were
24 living together, were romantically and sexually involved, and
25 were monogamous).  *Anderson* found: "Therefore, in addition to
26 marriage, courts have recognized both personal friendships and
27 non-marital relationships as types of 'highly personal
28 relationships' within the ambit of intimate associations

                                    **4**

1  contemplated by *Roberts*."

2    *Akers v. McGinnis*, 352 F.3d 1030, 1039-40 (6th Cir. 2003)
3  further citing *Roberts*, 468 U.S. at 617-18, held: "Concerning
4  intimate association the Supreme Court 'has concluded the choices
5  to enter into and maintain certain intimate human relationships
6  must be secured against undue intrusion by the State because of
7  the role of such relationships in safeguarding the individual
8  freedom that is central to our Constitutional scheme.'"

9    Although neither party has cited a Ninth Circuit case
10 directly on point, the Complaint's allegations of an intimate
11 domestic association, albeit unmarried, where decedent's family
12 was combined with Plaintiff; they lived together; she was
13 pregnant with decedent's child at the time of his death; they
14 shared finances; and co-habited and shared the intimate details
15 of each other's lives; all converge to satisfy the intimate
16 association familial relationship requirement of the Fourteenth
17 Amendment.  If Defendants challenge the duration and quality of
18 the relationship as an insufficient intimate association, this
19 factual dispute is not resolvable as a matter of law on a Rule
20 12(f) motion to strike.

21

22 B.    <u>Intimate Association Analysis</u>

23    The Ninth Circuit in *IDK, Inc. v. County of Clark*, 836 F.2d
24 1185 recognizes that the relationships protected by the
25 Fourteenth Amendment "are those that attend the creation and
26 sustenance of a family" and similar "highly personal
27 relationships."  *Id*. at 1193 (citing *Roberts*, 468 U.S. at 618-
28 19).  Individuals who are deeply attached and committed to each

other as a result of their having shared each other's thoughts, lives and experiences and who, by the very nature of such relationships, are involved in relatively few intimate associations during his or her lifetime, are all relevant factors to determine whether a particular association is eligible for protection by the Due Process Clause.  These factors include the number of persons involved in the relationship; the congeniality of the relationship; its duration; the purposes for which it was formed; and the selectivity in choosing participants.  Involvement in procreation, here present; raising and educating children, here present; cohabitation with relatives, here present; or other activities of family life all typify the required intimate association.  All the incidents of the *IDK* interpretation of *Roberts*' intimate association factors are here present.  The Complaint alleges a sufficient intimate association between Plaintiff Castro and the decedent to support a Fourteenth Amendment Due Process claim for unlawful State interference in protected a family relationship.

There is no question that for Plaintiff Angie Melissa Castro the Ninth Circuit expressly recognizes a parent's due process right to associate with his or her child and the standing of a child to sue for the deprivation of the loss of the familial association right with her parent. *See Porter v. Osborn*, 546 F.3d 1131, 1136 (9th Cir. 2008) (recognizing parent's Fourteenth Amendment Due Process right to associate with their deceased son).  A "child's interest in her relationship with a parent is sufficiently weighty by itself to constitute a cognizable liberty interest." *Smith v. City of Fontana*, 818 F.2d 1411, 1419 (9th

Cir. 1987), *cert. denied*, 484 U.S. 935 (1987) *overruled on other grounds by Hodgers-Duran v. Lopez*, 199 F.3d 1037, 1040, n.1 (9th Cir. 1999).

C.    Interaction of Fourteenth and First Amendments.

The First Amendment guarantees the right to "[T]wo sometimes overlapping types of protective association." *Rode v. Dellarciprete*, 845 F.2d 1195, 1204 (3d Cir. 1998).  The Third Circuit explained: "Associations founded on intimate human relationships in which freedom of association is protected as a fundamental element of liberty and associations formed for the purpose of engaging in activities protected by the First Amendment, such as the exercise of speech, assembly, and religion."  *Id.* at 1204 (citing *Roberts*, 468 U.S. at 617-18). The claim in this case is more properly analyzed consistent with the Fourteenth Amendment's Due Process guarantees, association "founded on intimate human relationships in which freedom of association is protected as a fundamental element of liberty." *Rees v. Office of Children & Youth*, Case No. 1:09-cv-283, --- F. Supp. 2d ----, 2010 WL 3906311, at 6, n.1 (W.D. Pa. Sept. 30, 2010) (citation omitted).  An unpublished Ninth Circuit decision,[1] *Bevelhymer v. Clark County*, 53 F.3d 337 (9th Cir. 1995) recognizes that "a state violates the Fourteenth Amendment when it seeks to interfere with the social relationship of two or more people."  *Id.* at 3 (citing *IDK*, 836 F.2d at 1193).  For

---

[1] This case, a pre-January 1, 2007 decision, is not citable authority, Ninth Circuit Rule 36-3; but is recognized for its persuasive effect and reasoning.

1  qualified immunity purposes: "At least by 1988, it was clearly
2  established that the Fourteenth Amendment protects relationships
3  between "individuals [who] are deeply attached and committed to
4  each other as a result of their having shared each other's
5  thoughts, beliefs, and experiences." *Id*. (citing *Wilson v.*
6  *Taylor*, 733 F.2d 1539, 1544).  The Circuit Court rejected the
7  Defendant's claim in *Bevelhymer* "that a reasonable public
8  official could not have known that the Fourteenth Amendment
9  protects intimate associations between unmarried couples."

10     *Bevelhymer,* a pleading case, held that "despite the clarity
11  of the law protecting intimate associations," it is necessary
12  that sufficient facts be alleged to identify the nature and
13  extent of the intimate association and that action was taken
14  against the decedent as a result of his association with
15  Plaintiff.  *Id.* at 4 (Reinhardt, J., dissenting) (recommending
16  that the case be remanded for opportunity to amend complaint:
17  "intrusion into Plaintiff's intimate association causing
18  termination of the relationship is an important and necessary
19  part of the Fourteenth Amendment claim.").  Here, Defendants have
20  not moved to dismiss the claim, rather, they move to strike the
21  claim as unauthorized by law, invoking state law, an apparent
22  misapprehension that federal law also governs intimate
23  association.

24

25  D.    State Law.

26     Defendants argue that the interface between State law and
27  Civil Rights Act § 1983 is governed by 42 U.S.C. § 1988.  Section
28  1988 requires a three-step analysis in considering whether to

1  apply State law in a Civil Rights action.  First, the Court must
2  look for a Federal rule.  Here, the inquiry ends, as Plaintiffs'
3  counsel correctly argued at the hearing on this motion, a
4  cognizable Federal right to intimate association exists under the
5  Fourteenth Amendment to the United States Constitution.  Federal
6  law, the Fourteenth Amendment governs this deprivation of
7  intimate association claim.  Recourse to State law is
8  unnecessary.

9        Even, *arguendo*, if the next stage of the inquiry were
10 reached, the Court looks for a State law and, applies it "only if
11 it is not inconsistent with the Constitution and laws of the
12 United States."  *Wilson v. Garcia*, 471 U.S. 261, 267 (1985).

13       Defendant contends that the State wrongful death statutes,
14 borrowed to supplement § 1983 in the general area of wrongful
15 death actions (citing *Bell v. City of Milwaukee*, 746 F.2d 1205,
16 1235-41 (7th Cir. 1984), a red flagged case), prevent standing in
17 this case based on California Code of Civil Procedure
18 §§ 377.60(a) and (f)(1), requiring a registered domestic
19 partnership to have been perfected to authorize a survivorship
20 action for wrongful death.  Accepting that no state right exists
21 under the survivorship law of California, the inquiry then turns
22 to whether the claimed right is consistent with the Constitution
23 and laws of the United States.  *Wilson v. Garcia, supra*, 471 U.S.
24 at 267.

25       The policies underlying § 1983 include compensation of
26 persons injured by deprivation of Federal rights and prevention
27 of abuses of power by those acting under color of State law.
28 *Robertson v. Wegmann*, 436 U.S. 584, 590-91 (1978).  Because

1  Plaintiff cannot bring suit under C.C.P. § 377 as recognized in
2  *Reynolds v. County of San Diego*, 858 F. Supp. 1064, 1069 (S.D.
3  Cal. 1994), denying Plaintiff a claim for loss of decedent's
4  intimate association and domestic relationship, resulting from
5  his allegedly wrongful death under color of state law, is
6  inconsistent with the § 1983 goals of compensation and deterrence
7  when applied to Blanca's own loss.  Barring both State and
8  Federal claims denies Plaintiff any compensation for her own
9  constitutionally protected interest in decedent's companionship.
10 It also limits the deterrent effect of § 1983 by allowing state
11 actors to avoid compensating for the full extent of the injuries
12 they cause.  California law should not be applied to prohibit
13 Plaintiff from bringing a claim under § 1983 for violation of her
14 own constitutionally protected Fourteenth Amendment intimate
15 association interests.
16 ///
17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

1

**CONCLUSION**

2       **Under the United States Constitution and Federal law, 42**

3  **U.S.C. §§ 1983 and 1988, both Plaintiffs, Blanca Estela Castro**

4  **and Angie Melissa Castro, the former unmarried domestic partner**

5  **and child of the decedent, Angel Mendoza-Saravia, have standing**

6  **under the United States Constitution and Federal law to assert a**

7  **Civil Rights claim for deprivation of their intimate familial**

8  **association with the decedent allegedly in violation of their due**

9  **process right protected by the Fourteenth Amendment to the United**

10 **States Constitution.   For all the reasons discussed above,**

11 **Defendants' Motion to Strike the allegations of the Second Claim**

12 **of the Second Amended Complaint as to Blanca Castro is DENIED.**

13

IT IS SO ORDERED.

14

**Dated:    February 17, 2011              /s/ Oliver W. Wanger**
15                                        UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

11